1  Patricia A. Shiu, State Bar No. 104894
   Elizabeth Kristen, State Bar No. 218227
2  Sharon Terman, State Bar No. 237236
   THE LEGAL AID SOCIETY
3  EMPLOYMENT LAW CENTER
4  600 Harrison Street, Suite 120
   San Francisco, CA 94107
5  Telephone: (415) 864-8848
   Facsimile: (415) 864-8199
6
7  Attorneys for Plaintiff
   Machado Arredondo
8

Michael D. Bruno, State Bar No. 166805
Nicole C. Harvat, State Bar No. 200469
GORDON & REES LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Defendant
MarketBar Café Partners, L.P.

9  ## THE UNITED STATES DISTRICT COURT

10  ## FOR THE NORTHERN DISTRICT OF CALIFORNIA

11  MACHADO ARREDONDO,

12        Plaintiff,

13

14      v.

15  MARKETBAR CAFÉ PARTNERS, L.P.,

16

17        Defendant.

Case No. C-07-03174 JCS

**JOINT CASE MANAGEMENT
STATEMENT AND PROPOSED
ORDER**

Date of CMC: September 21, 2007
Time of CMC: 1:30 p.m.

    Pursuant to Civil Local Rule 16-9 and this Court's Standing Order, the parties in the above-entitled action jointly submit this Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

    1. **JURISDICTION AND SERVICE.** The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be

served, a proposed deadline for service.  This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).  No issues exist regarding personal jurisdiction or venue.  All parties have been served.

   2.   FACTS.

PLAINTIFF'S POSITION:

        Machado Arredondo began working as a server for MarketBar on February 8, 2004.  She was qualified for the position and excelled at her job.  While at work on September 4, 2005, Ms. Arredondo received a phone call that her mother, Shirley Quintel, needed to have emergency heart surgery the next day.  Ms. Arredondo immediately informed her manager, Catherine Greene, of her mother's condition.  Greene gave Ms. Arredondo permission to leave work early to go to Modesto, where her mother was to have her surgery.  Greene and MarketBar co-owner Doug Biederbeck knew of Ms. Arredondo's emergency need for leave to care for her mother who had a serious health condition.  No one at MarketBar informed Ms. Arredondo about her rights under FMLA and/or CFRA, even though she was eligible for twelve weeks of job-protected leave with the right to be reinstated to her same or comparable position.

        On September 5, 2005, Ms. Arredondo's mother underwent heart surgery and spent the next few days recuperating in the hospital.  Ms. Arredondo cared for her mother during this time.  From September 7 to 16, 2005, Ms. Arredondo returned to San Francisco and resumed her work at MarketBar.  Ms. Arredondo came back to San Francisco after only three days because she did not know her FMLA and/or CFRA rights.

        On September 15, 2005, the hospital discharged Ms. Arredondo's mother, but her mother continued to require plaintiff's care.  On September 16, 2005, Ms. Arredondo told manager Dan Burns that she needed additional time off to care for her mother.  Burns allowed Ms. Arredondo to leave and asked her to periodically apprise him of her mother's status, which Ms. Arredondo did.  Again, MarketBar failed to inform Ms. Arredondo of her rights under FMLA and/or CFRA.

1       From September 16 to 26, 2005, Ms. Arredondo cared for her mother.  On September 20,

2   2005, Ms. Arredondo's mother suffered post-operative complications that required her mother to

3   be re-admitted to the hospital.  On September 26, 2005, Ms. Arredondo returned to San

4   Francisco and informed MarketBar that her mother required additional care and that Ms.

5   Arredondo needed additional time to care for her mother during her recovery.  Biederbeck denied

6   Ms. Arredondo the requested leave.  Instead, Biederbeck told Ms. Arredondo that MarketBar

7   needed to "get her off the books" and suggested that she resign for "personal reasons."  Feeling

8   pressured to maintain a good relationship with defendant, and not having been informed of her

9   FMLA/CFRA rights, Ms. Arredondo was forced to resign.

10      On September 30, 2005, Ms. Arredondo's mother entered a skilled nursing facility.  On

11  October 15, 2005, the skilled nursing facility discharged plaintiff's mother.  From September 26

12  until October 15, 2005, plaintiff cared for her mother, periodically returning to San Francisco.

13      In about February 2006, Ms. Arredondo inquired about returning to MarketBar; defendant

14  failed to restore Ms. Arredondo at that time.   In about April 2006, Ms. Arredondo went to

15  MarketBar to speak with Catherine Greene about returning to MarketBar as a server.  Defendant

16  failed to restore Ms. Arredondo; instead, defendant told Ms. Arredondo to come back later.  In

17  late April 2006, Ms. Arredondo again sought to return to MarketBar—this time for a non-

18  equivalent position, a host—but defendant refused to place Ms. Arredondo in the host position.

19  In or about early May 2006, Ms. Arredondo once again sought to return to MarketBar, but

20  defendant refused.  However, Ms. Arredondo is informed and believes that defendant had hired

21  at least one new server following Ms. Arredondo's leave.  Ms. Arredondo is informed and

22  believes that the new server is younger than plaintiff and younger than 40 years old.

23  **DEFENDANT'S POSITION:**

24      MarketBar hired Plaintiff Machado Arredondo ("Plaintiff") on February 8, 2004 as a non-

25  exempt server earning $6.75 per hour plus tips.  She worked approximately 30 hours per week

26  and was eligible for benefits.  When hired, Plaintiff was provided with an Employee Handbook

27

28

1   and packet of pamphlets relating to unemployment benefits, short and long term disability, state

2   disability, and the company's injury and illness prevention program.

3       On September 4, 2005, Plaintiff received a call at work from her brother, who informed

4   her that their mother was going to be undergoing emergency surgery the following day.  Plaintiff

5   advised Owner Doug Biederbeck and Restaurant Manager Catherine Green regarding the

6   situation and requests to leave early in order to catch a bus to Modesto.  Ms. Green informed

7   Plaintiff that she would assist getting Plaintiff's shifts covered.  Mr. Biederbeck told Plaintiff to

8   take whatever time she needed.

9       On September 5, 2005, Plaintiff's mother underwent triple bypass surgery.  Plaintiff

10  remained with her mother in Modesto until around September 8, 2005, at which time she

11  returned to San Francisco.  Upon her return to work, no one requested that Plaintiff provide

12  documentation of her mother's medical condition.  Indeed, Mr. Biederbeck and Ms. Green had

13  no reason to doubt Plaintiff's reason for needing time off and did not ask for documentation

14  supporting the absence.

15      Plaintiff was scheduled to work on September 16, 2005, but requested to be excused from

16  her shift.  On that day, she told Ms. Green that she needed some additional time off to care for

17  her mother.  She asked for a temporary leave of absence, which Ms. Green *approved*.  Mr.

18  Biederbeck overheard the conversation Plaintiff had with Ms. Green and specifically instructed

19  Ms. Green to "keep Machado's file active."  He *never* denied Plaintiff her request for leave and

20  he *never* suggested to Plaintiff that she resign from her employment.

21      Plaintiff was placed subsequently placed on a leave of absence.  In other words, Plaintiff

22  was *not* terminated from her employment with MarketBar at this time.

23      Some time in between October 16 – 31, 2005, Plaintiff sought employment at another San

24  Francisco restaurant.  No one at MarketBar was aware that she had obtained employment

25  elsewhere during this time (and during which she was still an employee of MarketBar).

26      In late October 2005, some MarketBar employees saw Plaintiff near the restaurant.

27  Plaintiff was asked if she planned to return to work at MarketBar.  In response, Plaintiff told the

28

employees "Hell, no!"  That was the first time MarketBar learned that Plaintiff had no intention of returning to her job.  Still, no one at MarketBar terminated her.

Around December 20, 2005, Plaintiff came into the restaurant and sat down at the bar to eat.  Mr. Biederbeck was present and asked her when she planned to return to work and what her status was.  Plaintiff told Mr. Biederbeck that she did not plan to return to work because her mother was "too ill."  Interestingly, Her mother's illness did not prevent her from working at her other server position that she obtained in October 2006.  At that time, Mr. Biederbeck told Plaintiff that "I guess we'll have to take you off the books then."  Plaintiff's official date of termination was December 20, 2005 (which incidentally exceeds the 12-week allotment for FMLA or CFRA leave, using September 16, 2005 as the date of commencement for Plaintiff's leave).

Thereafter, in mid-April 2006, Plaintiff returned to MarketBar and inquired about available server positions at MarketBar.  She was referred to the server manager, who informed Plaintiff that the only position available was one which included weekend shifts.  Plaintiff refused the offer.  She subsequently filed the instant lawsuit.

In early July 2006, Plaintiff was fired for cause from her employment that she had obtained in October 2005.

### 3.   PRINCIPAL FACTUAL ISSUES IN DISPUTE.

(a) Whether MarketBar constructively terminated Ms. Arredondo.

(b) Whether MarketBar granted Ms. Arredondo all of the leave she requested.

(c) The extent of Ms. Arredondo's damages, and the extent to which she mitigated her damages.

### 4.   PRINCIPAL LEGAL ISSUES IN DISPUTE.

(a) Whether defendant's conduct constituted unlawful interference with plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a)(1).

(b) Whether defendant's conduct constituted unlawful discrimination in violation of the FMLA, 29 U.S.C. § 2615(a)(2).

(c) Whether defendant's conduct constituted an unlawful failure to grant leave in violation of the CFRA, Cal. Gov't Code § 12945.2(a).

(d) Whether defendant's conduct constituted unlawful discharge, failure to reinstate, refusal to rehire, discrimination, and/or retaliation in violation of the CFRA, Cal. Gov't Code § 12945.2(*l*).

(e) Whether defendant's conduct constituted unlawful age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, *et seq.*

(f) Whether defendant's conduct constituted unlawful age discrimination in violation of the Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12940(a).

(g) Whether defendant's conduct constituted an unlawful failure to take all reasonable steps to prevent discrimination from occurring, in violation of the FEHA, Cal. Gov't Code § 12940(k).

(h) Whether defendant's conduct constituted unlawful wrongful constructive termination in violation of public policy.

**5.    MOTIONS.**    No motions have been filed to date.  The parties do not anticipate filing any motions at this time.

**6.    AMENDMENT OF PLEADINGS.**  At this time the parties do not expect to add or dismiss parties, claims or defenses.

**7.    EVIDENCE.**  Plaintiff does not have a document-destruction program, nor does she conduct any ongoing erasures of e-mails, voice mails, and other electronically-recorded materials.  Defendant has interdicted any document-destruction program and ongoing erasures or e-mails, voice mails, and other electronically-recorded materials, to preserve evidence relevant to the issues reasonably evident in this action.

**8.    DISCLOSURES.**   In compliance with Federal Rule of Civil Procedure 26, initial disclosures will be completed on or before September 14, 2007, pursuant to the Order Setting Initial Case Management Conference.

**9.    DISCOVERY.**

1    No discovery has been taken to date. If early efforts to mediate this case prove

2    unsuccessful, the parties anticipate serving document requests, interrogatories, and requests for

3    admissions, although an exact number to be served cannot be determined at this time.

4    At this time, plaintiff anticipates taking a maximum of 8 depositions. Defendant expects

5    to take Plaintiff's deposition, a maximum of 4 witness depositions, and expert depositions, as

6    necessary.

7    Plaintiff anticipates that she may need to serve more than 25 interrogatories although she

8    will not serve more than 25 on defendant during the first round of discovery. Defendant

9    anticipates serving Interrogatories (30), Request for Production of Documents (15), and Request

10   for Admissions (10).

11   Plaintiff anticipates that a Fed. R. Civ. P. 26(c) protective order may be necessary to protect

12   plaintiff's medical privacy and the medical privacy of her mother. Defendant is agreeable to

13   executing a protective order, if necessary. The Parties will address the necessity of such once

14   discovery commences.

15       **10.    CLASS ACTIONS.** This is not a class action.

16       **11.    RELATED CASES.** The parties are not aware of any related cases or proceedings

17   pending before another judge or court or any other court or administrative body.

18       **12.    RELIEF.** Plaintiff seeks back pay; front pay; compensatory, punitive, and

19   liquidated damages; reinstatement; declaratory and injunctive relief; and reasonable attorneys'

20   fees and costs. Plaintiff will provide the documents supporting her damages calculation with her

21   initial disclosures.

22       **13.    SETTLEMENT & ADR.** The parties have filed a Stipulation and Proposed Order

23   Selecting an ADR process: private mediation. The parties are scheduled to mediate this matter

24   with Michael Loeb of JAMS on October 16, 2007.

25       **14.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES.** The parties have

26   consented to have Magistrate Judge Spero conduct all further proceedings.

27

28

JOINT CASE MANAGEMENT STATEMENT                                                    Page 7
CASE NO. C-07-03174 JCS

1  **15.**   **OTHER REFERENCES.**  This case is not suitable for binding arbitration, a special

2  master, or the Judicial Panel on Multidistrict Litigation.

3  **16.**   **NARROWING OF ISSUES.**  The parties stipulate to the following issues:

4  a) Ms. Arredondo was eligible for FMLA/CFRA leave.

5  b) Mr. Arredondo provided reasonable notice to defendant of her need for FMLA/CFRA

6  leave.

7  c) Ms. Arredondo's mother had a serious health condition.

8  d) Defendant did not specifically advise Ms. Arredondo with notice of her rights and

9  obligations under the FMLA/CFRA.

10  **17.**   **EXPEDITED SCHEDULE.**  The parties do not believe this is the type of case that

11  can be handled on an expedited basis with streamlined procedures.

12  **18.**   **SCHEDULING.**   Plaintiff's counsel are scheduled to take and defend more than

13  100 depositions between September and December 2007, and are scheduled to conduct several

14  trials from February 4, 2008 until February 22, 2008 and from June 2, 2008 until June 13, 2008.

15  Therefore, plaintiff proposes, and defendant agrees, to the following deadlines and court dates:

16  a)  Plaintiff's experts' disclosures, on or before October 1, 2008;

17  b)  Defendant's experts' disclosures, on or before October 1, 2008;

18  c)  Close of factual discovery, on or before November 1, 2008;

19  d)  Close of expert discovery, on or before December 15, 2008;

20  e)  Last day to file dispositive motions, on or before January 31, 2009;

21  f)  Pretrial conference, in February 2009;

22  g)  Trial, on or before March 31, 2009.

23  **19.**   **TRIAL.**  This case will be tried to a jury.  The parties anticipate that the trial will

24  last 5-7 court days.

25  **20.**   **DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS.**   Each party

26  has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.

27  No such interest is known other than that of the named parties to the action.

28

1    21.    MISCELLANEOUS.    The parties are not aware of any other matters that may

2   facilitate the just, speedy and inexpensive disposition of this matter.

3

4   Dated:  September 14, 2007          By:   _Sharon Ter_____

                                              Sharon Terman
5                                             Attorney for Plaintiff Machado Arredondo

6

7

8   Dated:  September 14, 2007          By:   _____

                                              Nicole C. Harvat
9                                             Attorney for Defendant MarketBar Café
                                              Partners LP
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CASE MANAGEMENT ORDER**

2      The Case Management Statement and Proposed Order is hereby adopted by the Court as the

3  Case Management Order for the case and the parties are ordered to comply with this Order.  In

4  addition the Court orders:

5

6

7

8

9  Dated: _____

10

11                                    _____

12                                    THE HONORABLE JOSEPH C. SPERO
                                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28